**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **ROBERT P. MARGESON, SR.**<br>on behalf of himself and all others<br>similarly situated<br><br>          **Plaintiff,**<br>  vs.<br><br>**CHOICEPOINT, INC.**<br>    and<br>**CHOICEPOINT SERVICES, INC.**<br>    and<br>**NATIONAL DATA RETRIEVAL, INC.**<br><br>          **Defendants.** | Civil Action No.<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### I.   PRELIMINARY STATEMENT

1.    This is a consumer class action based upon Defendants' widespread violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA"). The right of consumers to inspect and correct credit data sold about them is at the heart of the FCRA. Defendants deprive consumers of this right by willfully failing to comply with the FCRA and refusing to follow its requirements. Defendants, individually and in concert with each other, regularly sell public record information about Pennsylvania consumers, including bankruptcies, civil judgments and tax liens, to third party credit reporting agencies. Defendants compile and maintain select data concerning these types of public records in one or more private computer database(s). Defendants know that the public records that they sell from their database(s) are expected to be used, and are in fact used, in connection with eligibility determinations for consumer credit, employment and insurance. Defendants thus function as consumer reporting agencies ("CRAs") under the FCRA. Nevertheless, Defendants intentionally have fail to comply with any of the

provisions of the FCRA concerning CRAs with respect to public records. As a result, Defendants deprive Pennsylvania consumers of rights afforded to them by the FCRA to obtain free of charge a copy of the reports that the Defendants sell about them, to dispute (and to have corrected) any inaccurate or incomplete information that the Defendants are reporting, and to require that the Defendants only report information that adheres to the FCRA standard of maximum possible accuracy.

## II.   JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III.   PARTIES

4. Plaintiff Robert P. Margeson, Sr. is an adult individual who resides at 3517 Arthur St., Philadelphia, PA 19136.

5. Defendant ChoicePoint, Inc. is a business entity that provides background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant regularly conducts business in Philadelphia County and the Commonwealth of Pennsylvania, and has operated places of business concerning the reporting of public records information located at 7 Foster Avenue, Suite 200, Gibbsboro, NJ 08026 and at 300 Phillips Boulevard, Suite 500, Ewing, NJ 08618.

6. Defendant ChoicePoint Services, Inc. is a business entity that provides background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency. Defendant regularly conducts business in Philadelphia County and the Commonwealth of Pennsylvania, and has operated places of business concerning the

reporting of public records information located at 7 Foster Avenue, Suite 200, Gibbsboro, NJ 08026 and at 300 Phillips Boulevard, Suite 500, Ewing, NJ 08618.

7.     Defendant National Data Retrieval, Inc. ("NDR") is a business entity that provides background screening services, decision-making intelligence, public record reports and operates as a consumer reporting agency.  Defendant regularly conducts business in Philadelphia County and the Commonwealth of Pennsylvania.  Based upon Plaintiff's information and belief, NDR was acquired by Defendant ChoicePoint, Services, Inc. and/or Defendant ChoicePoint, Inc.

8.     Defendant ChoicePoint, Inc. operates and controls Defendants ChoicePoint Services, Inc., and NDR.   Upon information and belief, Defendants act collectively and in concert with each other.

### IV.     FACTUAL ALLEGATIONS

#### A.     Defendants Function As A Consumer Reporting Agency

9.     Defendants employ and rely upon various employees, agents and contactors for the purposes of gathering public records reports concerning, among other things, bankruptcies, civil judgments and tax liens.

10.     Defendants' agents sometimes gather public records data from courthouses and other government buildings and other times gather such data by going "online."

11.     Defendants do not gather the complete court or government files concerning any particular bankruptcy, civil judgment or tax lien, but only select data as requested by their clients who purchase it.

12.     The public records data relates to individual consumers, not businesses.

13. Defendants assemble and maintain the public records data that they collect in one or more private computer databases.

14. From their database(s) Defendants regularly sell public records data concerning bankruptcies, civil judgments and tax liens to third parties, including Trans Union, Equifax and Experian.

15. Defendants regularly sell and communicate public record data to the above third parties for a fee, charging a fee for each such public record sold.

16. Defendants know that the public record data they regularly sell to Trans Union, Equifax and Experian will be placed in consumer credit reports that are expected to be used and are, in fact, used in connection with consumer credit, employment and insurance transactions.

17. Defendants further know that public records data is viewed as derogatory in nature and can be a basis to deny consumers credit, employment or insurance, or to offer them only adverse rates and terms of credit or insurance.

18. Defendants further know that federal courts have found ChoicePoint, Inc. and ChoicePoint Services, Inc. to have the obligations of consumer reporting agencies under the FCRA.

19. Defendants engage in tens of thousands of transactions concerning the communication and/or sale of public records data concerning Pennsylvania consumers each year.

20. Defendants have knowingly and deliberately decided that they will not comply with the FCRA as consumer reporting agencies with respect to the public record data sales and communications discussed above.

21. By regularly selling and communicating public record data for a fee with the anticipated or expected use of such reports by the entities referenced above, Defendants operate as CRAs, consumer reporting agencies "that compile and maintain files on consumers on a nationwide basis," and national specialty consumer reporting agencies ("NSCRAs") as defined by 15 U.S.C. § 1681a(f), a(p) and a(w), respectively.

22. Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer report information by CRAs and NSCRAs.

23. Despite the fact that Defendants assembled and compiled public records data for sale until at least 2007, Defendants will not disclose the contents of those reports to Pennsylvanians or the persons about whom they sell reports.

24. Further, at least through 2007 Defendants did not maintain any toll-free telephone numbers or any other means available to consumers to directly contact any of Defendants in order to dispute and correct any errors on the reports Defendants sell about them.

25. Importantly, Defendants do not comply with the FCRA's requirement of following procedures that assure "maximum possible accuracy" concerning the information in their reports.

26. As a consequence of their failure to comply with the FCRA in any way, Defendants routinely make mistakes, misidentifying the nature of the public records data they sell, and further have no procedure for correcting such harmful mistakes.

### B.     The Experience of The Representative Plaintiff

27. Plaintiff is but one consumer about whom Defendants sold inaccurate public record data.

28. In 2006, Plaintiff learned that the national credit bureaus were incorrectly reporting that he had a civil judgment entered against him in the amount of $1,479 with the Philadelphia County Court, which had apparently been satisfied.

29. Defendants sold and communicated information concerning the civil judgment to the national credit bureaus on multiple occasions.

30. Even after Plaintiff disputed the inaccurate judgment with the credit bureaus, Defendants verified that the inaccurate judgment belonged to Plaintiff to the national credit bureaus. Because neither the credit bureaus nor Defendants disclose that Defendants are the source of the public records data sold by the credit bureaus, Plaintiff was never aware that Defendants were the source of the inaccurate judgment.

31. In fact, the civil judgment was not lodged against or ever owed by Plaintiff, but rather a different "Robert Margeson," believed to be Plaintiff's son.

32. Although Plaintiff sought to correct this harmful error that was misreporting as his credit obligation, Defendants intentionally kept their identity hidden as the credit bureaus' source of the public record data.

33. Because of Defendants' failure to abide by the FCRA as CRAs at least until 2007, Plaintiff was unable to obtain and review the information that the Defendants were reporting about him, dispute this gross inaccuracy with the Defendants, and ascertain all of the sources to whom Defendants have sold this information and the dates on which such information was sold.

34. Neither Plaintiff nor any of the Class members as set forth below are aware of the existence of Defendants' identity. It was only through Plaintiff's retention of counsel that he came to learn of Defendants.

35. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

36. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## V. CLASS ACTION ALLEGATIONS

37. Plaintiff brings this action on behalf of the following Class:  All persons residing in Pennsylvania about whom Defendants sold or reported a bankruptcy, civil judgment or tax lien record to any company or third party for a fee during the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of the resolution of this case.

38. The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendants, Plaintiff avers upon information and belief that the Class numbers in the thousands.

39. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The principal questions concern whether the Defendants willfully and/or negligently violated the FCRA by failing to provide consumers with access to public records reports that they sell about them, as well as a mechanism to dispute and correct errors in those reports.

40. Plaintiff's claims are typical of the claims of the Class, which all arise from the same operative facts and are based on the same legal theories.

41. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is committed to vigorously litigating this matter. Further, Plaintiff has secured counsel experienced in handling consumer class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this claim.

42. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Class, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

44. Whether Defendants violated the FCRA can be easily determined by Defendants' policies and a ministerial inspection of Defendants' business records.

45. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from Defendants' records.

## VI. CAUSES OF ACTION

### Count One - FCRA

46. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

47. Pursuant to section 1681n of the FCRA, Defendants are liable for willfully violating the FCRA by engaging in the following conduct:

   (a) failing to provide consumers such as Plaintiff with a mechanism and/or process for accessing reports and information maintained and sold about them by Defendants in violation of 15 U.S.C. § 1681g;

   (b) failing to provide consumers such as Plaintiff with a mechanism and/or process for disputing inaccuracies in reports sold about them and refusing to accept such disputes in violation of 15 U.S.C. § 1681i;

   (c) failing to follow reasonable procedures to assure maximum possible accuracy of the reports it sold in violation of 15 U.S.C. § 1681e(b);

   (d) failing to make all disclosures and perform all responsibilities imposed upon consumer reporting agencies by the FCRA.

## VII. JURY TRIAL DEMAND

48. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

49. WHEREFORE, Plaintiff seeks judgment in favor of himself and the Class for the following:

   A. A determination that this action may proceed and be maintained as a class action;

B.  Statutory damages of $100 to $1,000 per Class member for willful violations of the FCRA;

C.  Punitive damages;

D.  Costs and reasonable attorney's fees pursuant to section 1681n of the FCRA;

E.  An order determining that Defendants are covered by the FCRA as consumer reporting agencies with respect to their sale of public records data and directing Defendants to comply with all statutory requirements for consumer reporting agencies;

F.  Such other and further relief as may be necessary, just and proper.

Respectfully submitted,
**FRANCIS & MAILMAN, P.C.**

BY: /s/ *JAMES A. FRANCIS*
JAMES A. FRANCIS
MARK D. MAILMAN
JOHN SOUMILAS
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

**DONOVAN SEARLES, LLC**
DAVID A. SEARLES
1845 Walnut Street, Suite 1100
Philadelphia, PA 19103
(215) 732-6067

Attorneys for Plaintiff and the Class

Dated: October 22, 2008